**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>INLAND GLOBAL MEDICAL GROUP, INC.,<br><br>                Debtor.<br><br>RICHARD K. DIAMOND, CHAPTER 7 TRUSTEE,<br><br>                Plaintiff,<br>v.<br><br>JIN KIM, M.D.,<br><br>                Defendant. | Case No. RS 02-26263 PC<br><br>Chapter 7<br><br>Adv. No. RS 04-02244 PC<br><br>**MEMORANDUM DECISION**<br><br>Date: March 21, 2006<br>Time: 9:00 a.m.<br>Place: U.S. Bankruptcy Court<br>       Courtroom 303<br>       3420 Twelfth Street<br>       Riverside, CA 92501 |

      Plaintiff, Richard K. Diamond, Chapter 7 Trustee ("Diamond") seeks to avoid certain alleged preferential transfers totaling $78,515.69 pursuant to 11 U.S.C. § 547(b). Defendant, Jin Kim, M.D. ("Kim") asserts affirmative defenses to Diamond's preference claims under 11 U.S.C. §§ 547(c)(2) and (4). The court conducted a trial in this adversary proceeding on March 21, 2006, at which Sandor T. Boxer appeared for Diamond and Stephen R. Wade appeared for Kim. At the conclusion of trial, the matter was taken under submission. Having considered the pleadings, evidentiary record, trial briefs and arguments of counsel, the court makes the following findings of fact and conclusions of law[1] pursuant to Fed. R. Civ. P. 52, as incorporated into Fed. R. Bankr.

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

**ORIGINAL**

1  P. 7052.

## I. STATEMENT OF FACTS

On October 4, 2002, an involuntary chapter 7 petition was filed against <u>Inland Global Medical Group, Inc.</u> ("Inland Global"), in Case No. RS 02-26263 PC in the United States Bankruptcy Court, Central District of California, Riverside Division. An order for relief under chapter 7 was entered in the case on December 27, 2002. Diamond is the duly elected chapter 7 trustee of the bankruptcy estate of Inland Global, and has standing to pursue the causes of action alleged in the complaint filed in this adversary proceeding on behalf of such estate. At all relevant times, Kim was a licensed physician rendering medical services and doing business in the state of California.

On or about July 8, 2002, Inland Global wrote Check # 70162 in the amount of $19,470.90, payable to Kim dated July 8, 2002. The check was paid or honored on July 22, 2002. On or about August 8, 2002, Inland Global wrote Check # 70774 payable to Kim in the amount of $59,044.79 dated August 8, 2002. The check was paid or honored on August 21, 2002. Neither Diamond nor Kim dispute that the checks were "transfers" of funds belonging to Inland Global within the meaning of the Bankruptcy Code and other applicable laws. Nor do the parties dispute that (a) the subject transfers were made for or on account of antecedent debts owed by Inland Global to Kim before such transfers were made; (b) the subject transfers were made within 90 days before October 4, 2002 - the date the involuntary petition was filed against Inland Global, and (c) the subject transfers enabled Kim to receive more than he would have received if the case were a case under chapter 7, the subject transfers had not been made, and Kim had received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

In support of his affirmative defenses, Kim testified that he rendered urgent care services to Inland Global patients at San Antonio Community Hospital during 2002

under a "Service Agreement" pursuant to which Kim and San Antonio Community Hospital shared equally any revenues generated from his services. Kim testified that he received a fee of $60 per patient visit directly from Inland Global pursuant to the terms of an Ancillary Care Service Agreement between Inland Global Medical Group, Inc. and Jin Kim, M.D., Inc. dated May 1, 2000 ("Contract"),[2] and that the payment was then divided equally between Kim and San Antonio Community Hospital pursuant to the Service Agreement.

Kim testified that he provided urgent care services to "between 400 and 500 Inland Global patients a month" at the San Antonio Community Hospital Rancho Urgent Care facility from June 2002 until November 2002. Kim did not provide billing records for the patients, stating that "all of the billing records for these patient visits were maintained electronically by the hospital." Kim also testified that he had patient charts reflecting treatment of 1,417 patients insured by Inland Global between July 8, 2002 and October 4, 2002. However, only three patient charts were attached to Kim's declaration and introduced into evidence.

## II. DISCUSSION

The court finds that it has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and venue is appropriate in this court under 28 U.S.C. § 1409(a). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F) and (O).

---

[2] The Contract, which was admitted as Defendant's Exhibit A, is signed by Jin Kim, as president of Jin Kim M.D., Inc. Jin Kim M.D., Inc. is the only professional listed in Exhibit A to the Contract who is authorized to render services on behalf of Inland Global under the Contract. At trial, Kim did not testify as president of Jin Kim M.D., Inc. Kim, individually, testified that he "entered" into the Contract with Inland Global and that all services to Inland Global patients were rendered under the Contract. However, each of the subject transfers sought to be avoided by Diamond were payable to Kim individually. There is no evidence of a separate contract between Inland Global and Kim, individually, for urgent care services to Inland Global patients during the period of July 8, 2002 to October 4, 2002.

A.    **Contentions of the Parties.**

The parties do not dispute that the subject transfers constitute preferential transfers by Inland Global to Kim totaling $78,515.69 pursuant to § 547(b). Plaintiff claims that he is entitled to recover the sum of $78,515.69 from Kim pursuant to § 547(b), together with prejudgment interest and costs of court. Kim claims that he provided services on behalf of Inland Global after the subject transfers which constituted "new value" under § 547(c)(4) in excess of the transfers sought to be avoided, and therefore, Plaintiff should take nothing by his suit. Alternatively, Kim claims an affirmative defense under § 547(c)(2), arguing that the transfers were in payment of debts incurred by the debtor in the ordinary course of business, made in the ordinary course of business, and according to ordinary business terms.

B.    **New Value.**

Section 547(c)(4) states that the trustee may not avoid under § 547 a transfer to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor –

   (A) not secured by an otherwise unavoidable security interest; and

   (B) on account of which new value the debtor did not make an otherwise
   unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). To prevail with the new value defense, Kim must show (a) that he gave unsecured new value to or for the benefit of the debtor; (b) after the preferential transfer; and (c) the debtor did not repay the new value by an otherwise unavoidable transfer. Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.), 52 F.3d 228, 231 (9th Cir. 1995). "The 'new value' defense is "grounded in the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of other creditors." Rodgers v. Schneider (In re Laguna Beach Motors, Inc.), 148 B.R. 322, 324 (9th Cir. BAP 1992), quoting In re Auto-Train Corp., 49 B.R.

605, 612 (D.D.C. 1985), aff'd sub nom., Drabkin v. A.I. Credit Corp., 800 F.2d 1153 (D.C. Cir. 1986).

In this case, Kim testified that, after receiving Check # 70162, he treated "numerous Inland Global patients" from July 8, 2002 to August 8, 2002. Kim reasoned that "[w]ith an estimated patient visit of at least 400 patients during that period at a flat fee charge of $60 per patient to Inland Global," he "rendered uncompensated urgent care services of more than $24,000." Kim further testified that, after receiving Check # 70774, he treated "numerous Inland Global patients" from August 8, 2002 to October 4, 2002. Kim concluded that "[w]ith an estimated patient visit of at least 1,000 patients during that period at a flat fee charge of $60 per patient to Inland Global," he "rendered uncompensated urgent care services of more than $60,000."

Diamond correctly points out that each subpart of Kim's "Exhibit B contains three pages of a single patient chart and the Court is asked to extrapolate from some estimate the total value of the new value rendered, all without a single bookkeeping record of any sort having been proffered." Other than Kim's uncorroborated estimates, there is no evidence establishing the number of Inland Global patients ostensibly treated by Kim between July 8, 2002 and October 4, 2002. Kim did not offer any evidence, aside from Exhibit B, establishing the actual services provided by Kim to Inland Global patients between July 8, 2002 and October 4, 2002, specifically the (a) identity or patient number of the Inland Global patient receiving the service; (b) date of service; (c) nature of service performed; (d) whether the service was performed individually or on behalf of the corporation; (e) whether the service was authorized under the Ancillary Care Service Agreement; (f) the amount of co-pay, if any, received from the patient for the service, and (g) balance owing for the service. Kim admits not only that billing records for the services exist, but that patient charts for such services are in his possession. Inexplicably none of the documents, except Exhibit B, were

-5-

offered into evidence.

The defendant in a preferential transfer proceeding has the burden of proving any exceptions to avoidance under § 547(c).  11 U.S.C. § 547(g).  See Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.), 184 B.R. 74, 75 (9th Cir. BAP 1995).  With respect to § 547(c)(4), creditors have the burden of establishing with specificity the measure of new value given to the debtor in the exchange.  See, e.g., Official Unsecured Creditors' Comm. v. Airport Aviation Servs., Inc. (In re Arrow Air, Inc.), 940 F.2d 1463, 1466 (11th Cir. 1991); Creditors' Comm. v. Spada (In re Spada), 903 F.2d 971, 976 (3rd Cir. 1990); Jet Florida, Inc. v. Am. Airlines, Inc. (In re Jet Florida Sys., Inc.), 861 F.2d 1555, 1559 (11th Cir. 1988).  Creditors relying on § 547(c)(4) must also prove that the new value has not been repaid by an otherwise unavoidable transfer.  See IRFM, 52 F.3d at 231; Nat'l Lumber, 184 B.R. at 81.  Because Kim has failed to establish with specificity the new value given to Inland Global and that the new value was not repaid by an otherwise unavoidable transfer, Kim is not entitled to a new value defense against Diamond's preference claims.

C.      **Ordinary Course of Business**.

Under § 547(c)(2), a trustee may not avoid an otherwise preferential transfer to or for the benefit of a creditor to the extent that such transfer was –

    (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

    (B) made in the ordinary course of business or financial affairs of the debtor and the transferee, and

    (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).  Section 547(c)(2) is comprised of a subjective test and an objective test.  See Cocolat, Inc. v. Fisher Dev., Inc. (In re Cocolat, Inc.), 176 B.R. 540, 549 (Bankr. N.D. Cal. 1995).  The transferee has the burden of proving the defense and

1 | must prove each of the three elements by a preponderance of the evidence. Arrow
2 | Elec., Inc. v. Justus (In re Kaypro), 230 B.R. 400, 404 (9th Cir. BAP 1999), aff'd in part,
3 | rev'd in part, 218 F.3d 1070 (9th Cir. 2000).

4 |     Sections 547(c)(2)(A) & (B), which together form the subjective test, require a
5 | creditor to demonstrate that the debt and its payment are ordinary in relation to past
6 | practices or a prior course of dealing between the debtor and the creditor. See, e.g.,
7 | Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.), 25 F.3d 728, 732 (9th Cir. 1994); Bell
8 | Flavors & Fragrances, Inc. v. Andrew (In re Loretto Winery, Ltd.), 107 B.R. 707, 709 (9th
9 | Cir. BAP 1989); Cocolat, 176 B.R. at 549.

10 |     Section 547(c)(2)(A) focuses on whether the incurrence of debt was ordinary,
11 | i.e., whether the debt was incurred by the debtor in the ordinary course of business.
12 | See Cocolat, 176 B.R. at 549.  Section 547(c)(2)(B) requires the court to examine the
13 | following factors to determine if payment of the debt was ordinary in light of past
14 | practices between debtor and creditor:  (1) the length of time the parties were engaged
15 | in the transactions at issue; (2) whether the amount or form of tender differed from past
16 | practices; (3) whether the debtor or creditor engaged in any unusual collection or
17 | payment activity; and (4) whether the creditor took advantage of the debtor's
18 | deteriorating financial condition. See Grand Chevrolet, 25 F.3d at 732; Cocolat, Inc.,
19 | 176 B.R. at 549.

20 |     Section 547(c)(2)(C)'s objective test requires a creditor to prove that the
21 | payment was ordinary in relation to prevailing business standards. See, e.g., Bank of
22 | the West v. Anderson (In re Jan Weilert RV, Inc.), 315 F.3d 1192, 1197 (9th Cir. 2003);
23 | In re Food Catering & Housing, Inc., 971 F.2d 396, 398 (9th Cir. 1992). In other words, §
24 | 547(c)(2)(C)'s objective standard requires proof of "practices common to businesses
25 | similarly situated to the debtor and the transferee." Loretto Winery, 107 B.R. at 709. It
26 | is not enough to prove what past practices were between the particular creditor and the
27 |

debtor. Id. The focus of the inquiry is whether the payment practice at issue comports with industry standards. See Jan Weilert, 315 F.3d at 1197. According to the Ninth Circuit:

> [T]he creditor must show that the payment he received was made in accordance with the ordinary business terms in the industry. But this does not mean that the creditor must establish the existence of some single, uniform set of business terms . . . . We conclude that "ordinary business terms" refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of [the ordinary course of business].

Id., quoting In re Tolona Pizza Prods. Corp., 3 F.3d 1029, 1033 (7th Cir. 1993). Section 547(c)(2)(C)'s objective test requires consideration of both the creditor's and the debtor's industries, i.e., "the broad range of terms that encompasses the practices employed by those debtors and creditors, including terms that are ordinary for those under financial distress." Jan Weilert, 315 F.3d at 1198 (citations omitted).

In this case, Kim's ordinary course defense is based primarily upon the following testimony from Kim:

> Inland Global paid for my services on a monthly basis, and ordinarily remained current on its flat fee payments to me. At times the payments were up to 30 days late. When Inland Global ceased operations, I used the same contract and terms in an agreement with Upland Medical Group. Upland Medical Group followed the same pattern of payment, remaining current for the most part on its flat fee payments but at times making payments up to 30 days late.

Viewing the evidence in a light most favorable to Kim, the court finds that Kim failed to sustain his burden to establish that the transfers were made in the ordinary course of business and made according to ordinary business terms.

With respect to § 547(c)(2)(B), Kim failed to submit any billing records or a billing history concerning urgent care services rendered on behalf of Inland Global to show the length of time the parties were engaged in the transactions and that the amount or form of tender did not differ from past practices. Nor did Kim introduce evidence to establish that neither Inland Global nor Kim engaged in any unusual collection or payment

- 8 -

1  activity. Even assuming Kim satisfied the subjective test of § 547(c)(2)(A) & (B), there is
2  little credible evidence that the payments were ordinary in relation to prevailing business
3  standards. The fact that Kim experienced the "same pattern of payment" with Upland
4  Medical Group does not satisfy Kim's burden to establish that Inland Global's payments
5  to Kim comported with industry standards. Kim did not offer any expert testimony
6  concerning the credit arrangements between other similarly situated debtors and
7  creditors in the industry nor any expert opinion as to whether Inland Global's payment
8  practices were consistent with what takes place in the industry. See In re Hessco
9  Indus., Inc., 295 B.R. 372, 376 (9th Cir. BAP 2003) (stating that Jan Weilert's
10 considerable relaxation of the burden on preference defendants in proving their
11 affirmative defenses under § 547(c)(2)(C) . . . [does] not relieve them of the requirement
12 to proffer some evidence to sustain that burden"). Based on the foregoing, the court
13 finds that Kim is not entitled to an ordinary course defense against Diamond's
14 preference claims.

## CONCLUSION

For the foregoing reasons, the court will enter judgment awarding the sum of $78,515.69 to Diamond pursuant to § 547(b), together with prejudgment interest from December 21, 2004, to entry of judgment, and costs of court. A separate judgment will be entered consistent with this opinion.

DATED:

**APR 0 4 2006**

PETER H. CARROLL
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do **not** file this form as a separate document.*

| In re INLAND GLOBAL MEDICAL GROUP, INC., | CHAPTER 7 |
|---|---|
| Debtor. | CASE NUMBER RS 04-02244 PC |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1. You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*: MEMORANDUM DECISION

   was entered on *(specify date)*: **APR 0 5 2006**

2. I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date)*: **APR 0 5 2006**

Dated: **APR 0 5 2006**

JON D. CERETTO
Clerk of the Bankruptcy Court

By: _C. Jeanmarie_
Deputy Clerk

---

Rev. 1/01   This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.   **F 9021-1.1**

Service List

Sandor T. Boxer, Esq.
Law Offices of Sandor T. Boxer
12400 Wilshire Blvd., Suite 1300
Los Angeles, CA   90025-1030


Stephen R. Wade, Esq.
Law Offices of Stephen R. Wade
400 N. Mountain Avenue, Suite 214B
Upland, CA 91786